1  AMSTER, ROTHSTEIN & EBENSTEIN LLP
   Daniel S. Ebenstein (DE 2109)
2  debenstein@arelaw.com
   Anthony F. Lo Cicero (AL 7538)
3  alocicero@arelaw.com
   Richard S. Mandaro (RM 2602)
4  rmandaro@arelaw.com
   Norajean McCaffrey (NM 5291)
5  nmccaffrey@arelaw.com
   90 Park Avenue
6  New York, New York 10016
   Telephone: (212) 336-8000
7  Facsimile: (212) 336-8001

8  Attorneys for Macy's, Inc. (f/k/a Federated
   Department Stores, Inc.), Bloomingdales By
9  Mail Ltd., Bloomingdales, Inc., FDS Bank
   and Macy's Credit and Customer Services,
10 Inc. (f/k/a FACS Group, Inc.)

11

12                IN THE UNITED STATES DISTRICT COURT
13                CENTRAL DISTRICT OF CALIFORNIA

14

15
   IN RE: KATZ INTERACTIVE CALL          ) Case No. CV 2:07-ml-01816-C-RGK
16 PROCESSING PATENT LITIGATION          ) (FFMx) and 2:07-CV-4958-RGK (FFMx)
                                         )
17                                       )
   This document relates to:            )
18                                       ) **MEMORANDUM IN SUPPORT OF**
                                         ) **MACY'S INDIVIDUAL MOTION FOR**
19 RONALD A. KATZ TECHNOLOGY             ) **SUMMARY JUDGMENT**
   LICENSING, L.P.,                      )
20                                       )
                                         ) Date:  To Be Determined
21           Plaintiff,                  ) Time:  To Be Determined
                                         )
22        v.                             )
                                         ) Judge:  Hon. R. Gary Klausner
23 CONSOLIDATED EDISON COMPANY           ) Ctrm:    Courtroom 850
   OF NEW YORK, INC., et. al.,           )
24                                       )
                                         )
25           Defendants.                 )
                                         )
26 AND RELATED COUNTERCLAIMS             )
   AND THIRD PARTY CLAIMS                )
27                                       )

28               ** PUBLIC VERSION **
───────────────────────────────────────────────
      MEMORANDUM IN SUPPORT OF MACY'S INDIVIDUAL MOTION FOR SUMMARY JUDGMENT
                  2:07-ML-1816-C-RGK; 2:07-CV-4958-RGK

1
2                                    **TABLE OF CONTENTS**
3

4  I.      INTRODUCTION ........................................................................................ 1
5  II.     THE MACY'S ACCUSED SERVICES AND THE RAKTL
           ASSERTED CLAIMS............................................................................... 1
6
           A.     Macy's Accused Services.................................................................. 1
7
           B.     Claims Asserted by RAKTL Against Macy's.................................. 3
8
   III.    SUMMARY JUDGMENT STANDARD ............................................... 5
9
           A.     Summary Judgment Standard ........................................................... 5
10
   IV.     NONINFRINGEMENT ......................................................................... 6
11
           A.     Summary Judgment Is Appropriate as to Accused
12                Services for Which RAKTL Has Proffered No Evidence
                  of Infringement................................................................................ 6
13
           B.     Summary Judgment Is Appropriate for All Claims that
14                Require Use of DNIS to Identify a Caller...................................... 7
15         C.     Summary Judgment Is Appropriate for All Claims that
                  Require Use of a Consumable Participation Key............................ 8
16
           D.     Summary Judgment Is Appropriate for All Claims that
17                Require Use of an Acknowledgment Number ................................ 10
18                1.      ████████mation Number Provided by ████████
                          the CCS Service Cannot Be U
19                        Acknowledge a Transaction To The
                          System" ................................................................................. 11
20
                  2.      The Confirmation Number Provided by the HR
21                        Service Cannot Be Used "to Verify or
                          Acknowledge a Transaction to the System" .................. 13
22
           E.     Summary Judgment Is Appropriate for '120:62 and 63
23                Because the Macy's Accused Services Use Identification
                  Signals and Not Caller Response Signals to Isolate a
24                Subset of Callers............................................................................ 13
25         F.     Summary Judgment is Appropriate for all Claims that
                  Require Entering of a "Customer Number" in the '762
26                Patent Claims................................................................................ 15
27         G.     Summary Judgment is Appropriate for '863:43 and 44
                  Which Require Entering of both a "Customer Number"
28                and "Personal Identification Data".............................................. 17

1    H.    Summary Judgment is Appropriate for Claims Requiring
         a Plurality of Formats ...................................................................... 18
2
3    I.    Summary Judgment Is Appropriate for '762:48 Which
         Requires Receipt of Data for Subsequent Processing ................................. 19
4    J.    Summary Judgment Is Appropriate on Method Claims
         Asserted Against Macy's Where Multiple Actors Are
5         Required to Meet the Claim Limitation ..................................................... 21
6         1.    The Macy's CCS, EGC and HR Services Do Not
              Provide Digital Responsive Signals ................................................ 21
7
8         2.    Macy's Has No Control Over Interfacing Callers
              to the PSTN and Interfacing the PSTN to the
              Macy's System ............................................................................... 23
9
10   V.    DAMAGES ....................................................................................... 24
11   A.    Macy's Is Entitled to Summary Judgment of Non-
         Infringement for the Period After December 21, 2005 ............................. 24
12         1.    RAKTL's Damages as Against the BBM and EGC
              Services Should Be Limited to pre-December 21,
13              2005 ................................................................................................ 24
14         2.    RAKTL's Damages as Against All Macy's
              Accused Services Should Be Limited to pre-
15              December 21, 2005 to the Extent the Asserted '120
              Patent Claims Are Invalid ................................................................ 24
16   B.    RAKTL Cannot Prove Willful Infringement by Macy's ........................... 24
17   VI.   CONCLUSION ................................................................................... 31
18
19
20
21
22
23
24
25
26
27
28

1

2

# TABLE OF AUTHORITIES

3

4

## <u>CASES</u>

*Abbott Labs. v. Sandoz, Inc.*, 532 F. Supp. 2d 996 (N.D. Ill. 2007) ............................... 30

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d
    1324 (Fed. Cir. 2006) ...................................................................................... 15

*Arthur A. Collins, Inv. v. Northern Telecom, Ltd.*, 216 F.3d 1042 (Fed.
    Cir. 2000) ......................................................................................................... 5

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*, No. 2007-1243,
    2008 U.S. App. LEXIS 207 (Fed. Cir. Jan. 7, 2008)........................................ 28

*Carnegie Mellon Univ. v. Hoffman La Roche Inc.*, 541 F.3d 1115
    (Fed. Cir. 2008) .............................................................................................. 16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F .3d 801
    (Fed. Cir. 2002) .............................................................................................. 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................... 5

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) ................................... 25

*Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332 (Fed. Cir. 2003)......................... 21

*Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301 (Fed. Cir.
    2008) ............................................................................................................... 6

*Franklin Elec. Co. v. Dover Corp.*, No. 05-C-598-S, 2007 WL
    5067678 (W.D. Wis. Nov. 15, 2007) .......................................................... 28, 29

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350 (Fed. Cir.
    2005) ............................................................................................................... 16

*Gammino v. Cellco P'ship*, 527 F. Supp. 2d 395 (E.D. Pa. 2007) ....................... 23

*Global Patent Holdings, LLC v. Panthers BRHC LLC*, No. 08-80013,
    2008 U.S. Dist. LEXIS 61697 (S.D. Fl. Aug. 13, 2008)............................... 22, 23

*Honeywell Intl, Inc. v. Universal Avionics Systems Corp.*, 488 F.3d
    982 (Fed. Cir. 2007) ...................................................................................... 5, 6

*Imonex Servs., Inc. v. W.H. Munzprufer Dieter Trenner Gmbh*, 408
    F.3d 1374 (Fed. Cir. 2005) ........................................................................... 27, 28

*In re Seagate Tech.*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc) ............. 25, 27, 28, 29, 30

*Kearns v. Chrysler Corp.*, 32 F.3d 1541 (Fed. Cir. 1994)................................. 24

*Lucent Techs., Inc. v. Gateway, Inc.*, No. 07-CV-200-H, 2007 U.S.

Dist. LEXIS 95934 (S.D. Cal. Oct. 30, 2007)........................................... 28, 29, 30

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).................... 22, 23

*Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644 (Fed. Cir. 1994) ........................ 5

*Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043 (Fed. Cir. 2001) .................. 1, 5, 6, 7

*Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307 (Fed. Cir. 2007) ............................ 3, 4

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999) ................................................................................................. 21

*Symantec Corp. v. Computer Associates Int'l*, 522 F.3d 1279 (Fed. Cir. 2008)................................................................................................. 21

*Techsearch L.L.C. v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002) ................................. 5

*Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, No. 01-CV-09871, 2003 U.S. Dist. LEXIS 23553 (C.D. Cal. Dec. 2, 2003) ............................................................................................. 26, 29

*Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) .................................................................................. 16


**TRACK B RULINGS**

§ 102/103 Summary Judgment Order (D.I. 2547)................................................. 3, 26, 28

§ 112 Summary Judgment Order (D.I. 2330) ........................................................ 26, 28

Claim Construction Order (D.I. 1448)...................................... 7, 9, 11, 13, 15, 16, 18, 19

**STATUTES**

35 U.S.C. § 271(a) ........................................................................................... 28

**RULES**

Fed. R. Civ. P. 56........................................................................................... 5

## I.      INTRODUCTION

The Ronald A. Katz Technology Licensing, L.P. ("RAKTL") patent portfolio consists of 53 patents and thousands of claims that all stem from one patent application filed in 1986.  (SUF 1.)  RAKTL filed suit against Macy's, Inc. (f/k/a Federated Department Stores, Inc.), Bloomingdale's By Mail Ltd., Bloomingdale's, Inc., FDS Bank and Macy's Credit And Customer Services, Inc. (f/k/a FACS Group, Inc.) (collectively, "Macy's") on June 7, 2007, alleging patent infringement of twenty-one patents and an unspecified number of claims within this portfolio.  (SUF 2.)  Since RAKTL filed suit against Macy's, its assertions have been narrowed to less than fifteen claims from six patents as applied against a subset of accused services consisting of five Macy's services.  Two of the five remaining Macy's services are accused solely of infringing patents that expired on December 21, 2005.

Macy's moves for summary judgment of non-infringement on the remaining asserted patent claims and asks the Court to limit RAKTL's ability to collect damages to the subset of accused services actually asserted against Macy's as viewed in light of the presently asserted claims.  Macy's also moves for a finding on summary judgment of non-willfulness.

## II.     THE MACY'S ACCUSED SERVICES AND THE RAKTL ASSERTED CLAIMS

### A.      Macy's Accused Services

It is RAKTL's initial burden to establish infringement.  *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); (COL 1).  On June 27, 2008, RAKTL provided to Macy's an Amended Disclosure of Accused Services.  (SUF 3.) This disclosure stated that the RAKTL accused services include but are not limited to services identified as:

> Macy's Credit Customer Service, Macy's Credit Inquiries, Macy's West
> Customer Service, Macy's Pay-by-Phone, Bloomingdale's Credit Customer
> Service, Bloomingdale's By Mail Catalogue Customer Service, Robinsons

1    May/Meier & Frank Shop By Phone, Robinsons May Account Customer
2    Service, Robinsons May/Meier & Frank Mattress By Phone, Meier &
3    Frank Account Customer Service, Lord & Taylor Shop By Phone, Famous-
4    Barr/L.S. Ayres/Jones Customer Service, Famous-Barr's Automated Credit
5    System, L.S. Ayres Automated Credit System, The Jones Store Automated
6    Credit System, Filene's Furniture Customer Service, Hecht's/Strawbridge's
7    Furniture Customer Service, Priscilla of Boston Customer Service,
8    Filene's/Kaufmann's Shopping Service, Goldsmith's-Macy's Credit and
9    Customer Services Inquiries, Macy's Credit Card Account Questions,
10   Lazarus-Macy's Credit and Customer Service, MacyBed, Macy's Furniture
11   and Mattress Delivery Service, Macy's Customer Service, Macy's
12   Corporate Sales and Service, Macy's Privacy Customer Service, and
13   Bloomingdale's Privacy Customer Service.

14   (SUF 4.)

15       Backing away from this extensive list of accused services, RAKTL's
16   infringement contentions and the report of its expert Dr. Lucantoni now identify only
17   five accused services as follows:

18       (1)   Credit and Customer Service ("CCS") (including Macy's Star Rewards
19   Customer Service, Macy's Visa Star Rewards Customer Service, Bloomingdale's Visa
20   Customer Service, Bloomingdale's Credit Customer Service and Pier One Credit Card
21   Services);

22       (2)   HR (including HR Services Information Line, Macy's HR West);

23       (3)   Bloomingdale's By Mail ("BBM") (including Bloomingdale's By Mail
24   Customer Service, Bloomingdale's By Mail Gift);

25       (4)   Electronic Gift Card/Certificate ("EGC") (including EGC Central, EGC,
26   EGC West, EGC Hawaii & Guam, Gift Card Hotline); and

27

28

1      (5)     May Accused Services ("May") (including May Credit Customer Service

2  ("May CCS"), Credit Authorizations, Author Lookup, Courtesy Phone, New Accounts,

3  Instant Credit, and Mail and Telephone).

4  (SUF 5.)

5      Regarding the May accused services, while Dr. Lucantoni identified multiple

6  services as comprising these Accused Services, he admitted that he has only provided

7  assertions against May Credit Customer Service ("May CCS") and has no opinion

8  regarding infringement of other May services beyond May CCS.  (SUF 6.)

9      **B.     Claims Asserted by RAKTL Against Macy's**

10      Over the course of this litigation, RAKTL reduced the number of claims asserted

11  against Macy's to sixteen in response to various court orders, and subsequently

12  modified the identification of the sixteen claims being asserted multiple times.  (SUF 7.)

13  RAKTL's final identification of claims on September 2, 2008, identified the following

14  claims as being asserted against Macy's:

15          • U.S. Patent No. 5,255,309 ("the '309 patent"), claim 46

16          • U.S. Patent No. 5,974,120 ("the '120 patent"), claims 57, 62, 63 and 67

17          • U.S. Patent No. 5,561,707 ("the '707 patent"), claim 24

18          • U.S. Patent No. 5,898,762 ("the '762 patent"), claims 45, 48, 53 and 67

19          • U.S. Patent No. 5,684,863 ("the '863 patent"), claims 43 and 44

20          • U.S. Patent No. 6,335,965 ("the '965 patent"), claims 38, 43, 51 and 67

21  (SUF 8.)

22      Dr. Lucantoni submitted a report that he supplemented on October 24, 2008,

23  accusing the subset of five accused services of infringing some of these sixteen claims.

24  (SUF 9.)  However, three of these sixteen claims, '120:57, 67 and '965:43 were

25  expressly invalidated by this Court in its August 4, 2008, Summary Judgment Order (§

26  102/103 Order (D.I. 2547)  at 11-14, 45-46, 19-31, 33-36).  Claim 51, which is a base

27  claim of claim 53 which was invalidated by the Court (*see* § 102/103 Order at 19-31,

28  33-36) is necessarily invalid by law.  *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 498

F.3d 1307, 1319-20 (Fed. Cir. 2007); (COL 2).[1]  Dr. Lucantoni acknowledged the Court's invalidity ruling, noting that these claims were included in his report "if the Court reconsiders its invalidity rulings regarding the claims, denies Macy's claims of invalidity, or the claims are held to be valid on appeal."  (SUF 10.)

Shortly before his deposition, Dr. Lucantoni supplemented his report for a second time and withdrew his assertion of '120:67.  (SUF 11.)  Dr. Lucantoni also modified his assertions of the '707 and '309 patents, withdrawing previously made assertions against the HR service.  (SUF 12.)  Subsequently, RAKTL stipulated it is no longer asserting claim '120:67 in its entirety or the '707 and '309 patents against the HR accused service.  (SUF 13.)  On January 13, 2009, RAKTL served an amended disclosure of asserted claims removing its assertion against '120:67.  (SUF 14.)  Thus, in light of the Court's 102/103 Order and RAKTL's stipulated withdrawn assertions, RAKTL's remaining assertions consist of just twelve claims not yet invalidated by this Court.[2]  These claims have been asserted, as addressed by Dr. Lucantoni in his expert report, against the following Macy's accused services:

| Patent | Asserted Claim | Accused Service |
|---|---|---|
| 5,255,309 | 46 | BBM[3] |
| 5,974,120 | 62 | CCS, HR, May |
| 5,974,120 | 63 | CCS, HR, May |
| 5,561,707 | 24 | BBM[3] |
| 5,898,762 | 45 | CCS |
| 5,898,762 | 48 | CCS |
| 5,898,762 | 53 | CCS |
| 5,898,762 | 67 | CCS |

---

[1] The C Track defendants asked this Court to take judicial notice of its August 4, 2008, ruling in its joint motion for summary judgment (D.I. 4289) regarding invalidity of these claims.  In the event the Court's invalidity rulings are reversed on appeal or in further proceedings in the C Track, Macy's reserves the right to present new arguments at trial regarding the invalidity and non-infringement of these claims.

[2] The C Track defendants filed their own summary judgment motions on invalidity on December 5, 2008, (D.I. 4281, 4289) covering each of the remaining claims asserted by RAKTL against Macy's.

[3] Dr. Lucantoni's report erroneously listed the HR service for this claim.  (SUF 16-18.)

| 5,684,863 | 43 | CCS, HR |
| 5,684,863 | 44 | CCS, HR |
| 6,335,965 | 38 | CCS, HR |
| 6,335,965 | 67 | CCS, EGC, HR |

(SUF 15.)

Five of these six patents, the '309 patent, '707 patent, '762 patent, '863 patent and '965 patent expired on December 21, 2005.  (SUF 19.)  The remaining patent, the '120 patent, expires on July 7, 2009.  (SUF 19.)

## III.    SUMMARY JUDGMENT STANDARD

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*quoting* Fed. R. Civ. P. 56(c)); (COL 3).  The patentee has the burden to prove infringement.  *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); (COL 4).  "[T]he party opposing the motion for summary judgment of non-infringement must point to an evidentiary conflict created on the record;" hence, a party cannot avoid summary judgment by general assertions of facts, general denials and conclusory statements. *Techsearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002); (COL 5).

An expert's opinion on patent infringement is insufficient to allow a case to move beyond the summary judgment stage unless it has a factual foundation in the record. *Arthur A. Collins, Inv. v. Northern Telecom, Ltd.*, 216 F.3d 1042, 1046-47 (Fed. Cir. 2000); (COL 6).  At this stage of the case, RAKTL cannot be permitted to amend its contentions (or otherwise advance new arguments and/or evidence) in an effort to avoid summary judgment, particularly where, as here, it has no justification to do so.  *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647-49 (Fed. Cir. 1994); *Honeywell*

1 | *Intl, Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 994 (Fed. Cir. 2007);

2 | (COL 7).

3 | For an accused infringer such as Macy's to satisfy its burden on summary

4 | judgment, "nothing more is required than the filing of a summary judgment motion

5 | stating that the patentee had no evidence of infringement and pointing to the specific

6 | ways in which accused systems did not meet the claim limitations." *Exigent Tech. v.*

7 | *Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2008); (COL 8). Summary

8 | judgment must be granted against a party which has failed to introduce evidence

9 | sufficient to establish the existence of an essential element of that party's case, on which

10 | the party will bear the burden of proof at trial. *Novartis Corp. v. Ben Venue Labs.*, 271

11 | F.3d 1043, 1046 (Fed. Cir. 2001); (COL 9).

12 | For the reasons set out below, Macy's satisfies this standard and is, therefore,

13 | entitled to summary judgment as a matter of law that it does not infringe any of the

14 | asserted claims. Further, as addressed below, Macy's is entitled to summary judgment

15 | to limit the damages RAKTL is seeking to patents not yet invalidated by the Court as

16 | asserted against the subset of Macy's accused services addressed by RAKTL's expert,

17 | Dr. Lucantoni. Macy's is also entitled to summary judgment of non-willfulness.

18 | **IV. NONINFRINGEMENT** [4]

19 | **A.   Summary Judgment Is Appropriate as to Accused Services for Which**

20 | **RAKTL Has Proffered No Evidence of Infringement**

21 | As noted *supra*, RAKTL initially accused numerous Macy's services of

22 | infringing its patents yet failed to include contentions for these "Accused Services"

23 | including in the expert report of Dr. Lucantoni. As addressed *supra*, Dr. Lucantoni only

24 | provided contentions with regard to the CCS, HR, EGC, BBM and May CCS services.

25 | (SUF 4, 5.) RAKTL has failed to provide evidence that any other "Accused Service"

26 |

27 | [4] This Motion will address only the most obvious grounds for noninfringement for each asserted claim. Macy's reserves all rights to present other noninfringement grounds

28 | through the pendency of this case.

1  beyond those addressed by Dr. Lucantoni infringes any of its patents.  Thus, the Court

2  should grant summary judgment that RAKTL cannot potentially recover damages based

3  on any Macy's service other than the CCS, HR, EGC, BBM or May CCS accused

4  services.  *See Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001);

5  (COL 10).

6        **B.     Summary Judgment Is Appropriate for All Claims that Require Use of**

7              **DNIS to Identify a Caller**

8        Claims '120:62 and 63 require the use of "dialed-number identification signals to

9  identify one from a plurality of numbers dialed by the callers."  (SUF 20.)  Claims

10  '863:43 and 44 require the "means to receive called number identification signals

11  (DNIS)."  (SUF 21.)  This Court has construed the term "dialed-number identification

12  signals" or "DNIS" to mean "signals that identify the number called."  (MDL CCO at 8;

13  COL 11.)  None of the Macy's accused services infringe the RAKTL patent claims

14  requiring the identification of "one from a plurality of numbers dialed by the callers"

15  because it is impossible for Macy's to "identify the number called" using the signals it

16  receives from its telecommunications provider.

17        Macy's is provided by its telecommunications provider, ████, with a vector

18  directory number ("VDN") which is in essence an "extension number in the PBX."

19  (SUF 22.)  Macy's refers to these VDN numbers as "DNIS" (SUF 23) but this "DNIS"

20  does not meet the RAKTL claim limitations, as construed by this Court, because the

21  VDN cannot be used with certainty to identify the number called. ████████

22  ████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████

26  ████████████████████████████████████

27  ████████████████████████████████████

28  ██████████

1

2

3       Thus, RAKTL cannot

4 reasonably contend that VDN can be used reliably to determine the called number.

5 RAKTL may argue that there is a one-to-one relationship between certain called

6 numbers and VDN.  However, the '120 claim language, for example, does not in any

7 way qualify the requirement of "utilizing the dialed-number identification signals to

8 identify one from a plurality of numbers dialed by the callers."  (SUF 28.)  Being able to

9 *periodically* identify the number dialed by a caller does not meet the claim element.

10 (SUF 29.)  Further, Dr. Lucantoni's argument ignores the fact that every call to the

11 accused services may have been made using either ▮▮▮▮ or a local number routed

12 through ▮▮▮▮ and not from a toll-free number.  (SUF 30.)

13      The May CCS accused service operated similarly to the Macy's accused services,

14 and it was similarly impossible to determine with certainty the called number from the

15 "DNIS" supplied by the telecommunications provider to May, as required to meet this

16 limitation as construed by the Court.  (SUF 31.)

17      In sum, none of Macy's Accused Services infringe claims '120:62, 63 and

18 '863:43 and 44. (COL 12.)

19    **C.**    **Summary Judgment Is Appropriate for All Claims that Require Use of**

20         **a Consumable Participation Key**

21      Claims '309:46 and '707:24 require a "consumable participation key for

22 restricting the extent of access to said system to limit data stored from said respective

23 one of said individual callers on the basis of entitlement."  (SUF 32.)  The consumable

24 participation key was described in the '707 and '309 specifications as relating to a game

25 show format.  The specification notes that "[v]arious games will involve different

26 screening processes and clearances. . . .  [A]pprovals through a consumable key step

27 may be extended to incorporate functions of the processing unit 92 in association with

28

1  the memory 98." (SUF 33.)  During prosecution of the '707 patent, the applicant

2  described a "consumable" key as follows:

3        A "consumable key" is a code provided by a caller, which is examined by

4        the system to determine whether *any* further access to the system is to be

5        allowed, without it being a *function of time.*  A "consumable key" is *not*

6        automatically refreshed.  Thus, in applicant's system, a caller may enter

7        information only one time, or some pre-determined finite number of times.

8        If the number of predetermined allowed calls is exceeded (that is, the key

9        number is consumed), the call is terminated.

10  (SUF 34 (emphasis in original).)  Based on this language, the Court has construed a

11  consumable participation key to mean "a number or word that allows a caller access to a

12  service or part of service a predefined limited number of times and which cannot be

13  refreshed or recharged."  (MDL CCO at 19; COL 13.)

14        Warping the consumable participation key's function to act as a "key" for a

15  screening or clearance process, to prevent "*any* further access to the system" RAKTL

16  now asserts that ███████████████████████████████ using

17  Macy's BBM service ████████████████████████████

18  acts as such a key.  (SUF 35.)

19  █████████████████████████████████████████

20  ████████████████████████████████████████████

21  ███████████████████████████████████████

22  ██████████████████████████████████

23  ██████████████████████████████████████

24  ████████████████████████████████████████████

25  ██████████████████████████████████████

26  ██████████████████████████████████████

27  ███████████████████████████████████████████

28  ████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ████████████████████████

4     While the BBM service allowed the caller to ████████████████████

5 ████████ the caller is not prevented from "*any* further access to the system" as

6 required by the claim.  (SUF 42.) ████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 Even when ██████████████████████ the system can still be accessed by the

9 caller during that same call or at a later time (SUF 44), thereby negating the claim

10 element of '309:46 which states "testing caller data signals provided by a respective one

11 of said individual callers to specify a consumable participation key for restricting the

12 extent of access to said individual callers on the basis of entitlement."  (SUF 45.)

13     Even assuming the ████████ were somehow considered a consumable

14 participation key, RAKTL contends that the ██████████████████████████████

15 ████████████████████████ The BBM service source code

16 confirms that a ████████████████████████████████████████

17 ███████████████████████████████████

18 █████████████████████████████████ Therefore,

19 the ████████ itself is insufficient to be characterized as a consumable participation key.

20     In sum, the BBM service does not contain a consumable participation key and

21 summary judgment should be granted that it does not infringe claims '309:46 or

22 '707:24. (COL 14.)

23     **D.**    **Summary Judgment Is Appropriate for All Claims that Require Use of**

24         **an Acknowledgment Number**

25     Claims in the '762 and '965 patents require the use of acknowledgment numbers.

26 (SUF 48.)  Claim '762:41, from which multiple asserted claims depend, claims an

27 "acknowledgment generator structure for providing a computer generated

28 acknowledgement number to said individual callers."  (SUF 49.)  Claim '965:34, from

1 which asserted claim 38 depends, claims "providing computer generated
2 acknowledgment numbers to said individual callers to identify transactions to the
3 individual callers and the system."  (SUF 50.)  This Court has construed
4 "acknowledgement number" to be "a number used by a caller to verify or acknowledge
5 a transaction to the system."  (MDL CCO at 8; COL 15.)

6 　　　Summary judgment of non-infringement should be granted regarding these claims
7 because RAKTL has provided no evidence that either the CCS or HR accused services
8 provide numbers that can be used by callers "to verify or acknowledge a transaction to
9 the system." (COL 16.)

10 　　　**1.　　The Confirmation Number Provided by the ▉▉▉▉**
11 　　　**▉ CCS Service Cannot Be Used "to Verify or Acknowledge a**
12 　　　**Transaction To The System"**

13 　　　RAKTL contends that the ▉▉▉▉ CCS service provides an
14 acknowledgement number.  (SUF 51.) ▉▉▉▉
15 ▉▉▉▉
16 ▉▉▉▉
17 ▉▉▉▉　　Contrary to RAKTL's assertion, this confirmation number cannot
18 be construed as an acknowledgement number because this number is not used by the
19 caller to "acknowledge or verify a transaction to the system."  (*See* MDL CCO at 8;
20 COL 17.)

21 ▉▉▉▉
22 ▉▉▉▉
23 ▉▉▉▉
24 ▉▉▉▉
25 ▉▉▉▉
26 ▉▉▉▉
27 ▉▉▉▉
28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    This absurd scenario posited by RAKTL should not

24  preclude this Court from granting summary judgment of non-infringement to Macy's.

25    In sum, the CCS service, through ███████████, does not use

26  acknowledgement numbers and summary judgment should be granted that it does not

27  infringe claims '762:45, 48, 53 and 67 and claim '965:38.  (COL 18.)

28

## 2. The Confirmation Number Provided by the HR Service Cannot Be Used "to Verify or Acknowledge a Transaction to the System"

The Macy's HR service, 

In sum, the HR service does not use acknowledgment numbers and summary judgment should be granted that it does not infringe claim '965:38. (COL 20.)

## E. Summary Judgment Is Appropriate for '120:62 and 63 Because the Macy's Accused Services Use Identification Signals and Not Caller Response Signals to Isolate a Subset of Callers

Claim '120:56 from which asserted claims '120:62 and 63 depend, calls for "receiving at the receiving unit identification signals relating to the callers" and "testing said identification signals relating to the callers to determine whether to qualify the callers for access to at least a portion of operations of the system." (SUF 64.) Once these identification signals are received and tested, claim '120:62 (from which '120:63

1    depends) calls for using those identification signals to "avoid prompting certain callers

2    with a certain previously provided cue or cues" and then "providing to the qualified

3    callers at least one other caller cue."  (SUF 65.)

4         Once the "other caller cue" is provided, '120:62 requires "processing, to isolate a

5    subset of callers, caller-response signals responsive to certain of the plurality of caller

6    cues."  (SUF 66.)  Based on the plain reading of the patent claim language, caller-

7    response signals are additional signals received subsequent to the identification signals

8    called for in the patent.

9         Yet, Dr. Lucantoni argues that the caller-response signals used to isolate the

10   subset of callers are in fact the same identification signals received prior to the

11   qualification step.  (SUF 67.)  At his deposition, Dr. Lucantoni stated "I view response

12   signals as a larger set than identification signals."  (SUF 68.)  Specifically regarding the

13   Macy's CCS service, Dr. Lucantoni stated that "in the Macy's system, the identification

14   signals are a responsive signal."  (SUF 69.)  Dr. Lucantoni notes that the same signals,

15   ████████████████████████ are used both as identification signals and as responsive

16   signals "[b]ut in general, the claim allows response signals to be broader than ████████

17   ████.  In Macy's case, they both happen to be the same."  (SUF 70.)

18        When asked to find support in the specification for response signals being a

19   subset of identification signals, Dr. Lucantoni pointed to one section but then conceded

20   that this section listed both an identification signal, ANI, or an account number in

21   response to a vocal prompt, as well as a separate response signal.  (SUF 71.)

22        Regarding the HR service, Dr. Lucantoni stated that the ████████████████

23   ████████████ was the caller-response signals used to ████████████████████████

24   ████████████████████ (SUF 72.)  However, according to Dr. Lucantoni,

25   the ████████████████ was entered into the system as an identification signal earlier

26   in the call.  (SUF 73.)

27        Similarly, regarding the May CCS service, Dr. Lucantoni identified ████████

28   ████████████████████ as being an identification signal.  (SUF 74.)  The ████████

1          █████ is also identified as being a caller-response signal that is then used to locate

2 ████████ for developing subsets of callers.  (SUF 75.)

3        In sum, RAKTL asserts that the caller-response signals for the Macy's CCS, HR

4 and May services are in fact the same "identification signals" received earlier in the call.

5 Since the claim requires distinct identification signals and caller-response signals (SUF

6 64-66),  Macy's should be granted summary judgment that the CCS, HR and May

7 services do not infringe claims '120:62 and 63.  (COL 21.)

8        **F.**        **Summary Judgment is Appropriate for all Claims that Require**

9                  **Entering of a "Customer Number" in the '762 Patent Claims**

10        Callers to the Macy's CCS service are asked to provide an account number which

11 is the customer's credit card number.  (SUF 76.)  Callers to the CCS service do not have

12 a separate "customer number" that is distinct from the credit card number.  (SUF 77.)

13 While construing the RAKTL patent claims, this court construed "customer number" as

14 being "a number assigned to a customer by a vendor or merchant or recognized by a

15 vendor or merchant for the purpose of identification of the customer.  *The customer*

16 *number is distinct from a credit card number.*"  (MDL CCO at 27 (emphasis added);

17 COL 22.)  This Court expressly made this distinction between customer number and

18 credit card number based on the RAKTL claims themselves.  For example, regarding

19 '762:45, asserted against Macy's, the Court noted that "the patentee has . . . chosen to

20 use both 'customer number' and 'credit card number' in the same claims.  In the

21 absence of any evidence to the contrary, we presume that the use of different terms in

22 the same claims connotes different meanings."  (MDL CCO at 26-27 (citing *Applied*

23 *Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir.

24 2006); COL 23.)

25        Notwithstanding this explicit language from the Court, and apparently conceding

26 no literal infringement, RAKTL asserts that the credit card number and customer

27 number *are equivalents* under the doctrine of the equivalents.  (SUF 78.)  This is in

28 direct contravention of the Court's claim construction ruling.  Further, the doctrine of

1  equivalents cannot be used to vitiate a claim element.  *Warner-Jenkinson Company, Inc.*

2  *v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29-30 (1997); *Carnegie Mellon Univ. v.*

3  *Hoffman La Roche Inc.*, 541 F.3d 1115, 1129 (Fed. Cir. 2008) (permitting *Tag* as an

4  equivalent of *E. Coli* would render the claim limitation "bacterial source [is] *E. coli*

5  meaningless); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1362 (Fed. Cir.

6  2005) (rejecting doctrine of equivalents finding that would read "slidably mounted" out

7  of the claims); (COL 24).  It is unsurprising that Dr. Lucantoni ignored this precedent,

8  and argued for equivalence because Dr. Lucantoni has admitted that he is unaware of

9  this line of case-law. (SUF 79.) (Q:  [D]o you also understand that there are cases that

10  say that you cannot use the doctrine of equivalents to vitiate a claim limitation? . . . A:

11  I'm not familiar with that).  Further, Dr. Lucantoni admitted that he doesn't even know

12  what the word vitiate means. (SUF 80.)

13       RAKTL also argues that ████████████████████████████████████

14  ████████████████████████████████████████████████████ (SUF 81.)

15  However, in this case, ████████████████████████████████████████████

16  ██████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ██████████████████████████████████████████████████

19  ███████████████████████ (SUF 82.)

20       In sum, because Macy's has no customer number distinct from credit card

21  number, summary judgment should be granted that the CCS service does not infringe

22  claims '762:45, 48, 53 and 67.  (COL 26.)

23

24

25

26  █████████████████████████████████████████

27  ████████████████████████████████████████

28  █████████████████████████████

**G.     Summary Judgment is Appropriate for '863:43 and 44 Which Require Entering of both a "Customer Number" and "Personal Identification Data"**

Claims '863:43 and 44 require the use of "at least two forms of distinct identification including caller customer number data and at least one other distinct identification data element consisting of personal identification data." (SUF 83.) RAKTL asserts that both the CCS and HR services meet this claim limitation. (SUF 84.)

With regard to the CCS service, RAKTL maintains that ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████ *See* discussion *supra* § IV.F. Therefore summary judgment should be granted that the CCS service does not infringe '863:43 and 44. (COL 27.)

Regarding the HR service, RAKTL asserts that the two forms of distinct identification data required by the claims include ████████████████ ██████████████████████████ (SUF 86.) ████████████████ ████████████████████████████████████████████ (SUF 87.) RAKTL asserts that ████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████████



1

2

3

4

5

6

7

8

9

10

11

12

13    and the HR service does not meet this

14 limitation found in '863:43 and 44.  (COL 29.)

15    **H.    Summary Judgment is Appropriate for Claims Requiring a Plurality**

16    **of Formats**

17    Claims '863:43 and 44 require "means to receive called number identification

18 signals (DNIS) automatically provided by said communication facility to identify a

19 select one of a plurality of different called numbers associated with a select format of a

20 plurality of different formats."  (SUF 90.)  The claims further require "qualifying access

21 by said individual callers to said select format."  (SUF 91.)  RAKTL incorrectly asserts

22 that the CCS and HR services infringe this claim limitation because the CCS and HR

23 services are all part of one format as that term has been construed by this Court.  This

24 Court has construed format as:

25    refer[ring] to a call processing flow implemented by at least one computer

26    program that sets forth the content and sequence of steps to gather

27    information from and convey information to callers through pre-recorded

28    prompts and messages. Selection of, or branching to, a module or

1   subroutine within a computer program does not constitute selection of a

2   separate format. Selection of (or branching to), a second computer program

3   by a first computer program, that together implement a call process flow

4   application also does not constitute selection of a separate format.

5   (MDL CCO at 16; COL 30.)

6   Because a "format" requires at least one computer program that sets forth the

7   content and sequence of steps for that format, a "plurality of formats" requires at least

8   two computer programs.  The Macy's CCS and HR services operate on the same IVR

9   platform and are within the same IVR program.  (SUF 92.) █████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ███████████████████████████ ███████████   As this Court clearly

14  recognized, this type of branching to other modules within the IVR computer program

15  does not constitute multiple formats.  (MDL CCO at 16; COL 30.)

16  In sum, Macy's does not infringe claims '863:43, 44 because the HR and CCS

17  services are within the same format as that term has been construed by the Court.  (COL

18  31.)

19  **I.    Summary Judgment Is Appropriate for '762:48 Which Requires**

20  **Receipt of Data for Subsequent Processing**

21  Claim '762:48 requires that "data provided by said individual callers includes

22  audio data indicative of a name or address or both for said individual caller for

23  subsequent processing."  (SUF 95.)  RAKTL has asserted that the CCS service meets

24  this claim limitation.  (SUF 96.)  However, The Macy's CCS service does not store

25  audio data for subsequent processing.  ████████████████████████████

26

27  ──────────────────────

[6] The May accused services, which were operated separately from the other accused services were not accused by RAKTL of being one of the plurality of formats that met this claim limitation.

28



1

2

3

4

5

6

7

8

9

10

11

12

13        Further, the specification clearly indicates that audio data received during the call

14  is recorded for subsequent processing after the call: "Alternatively, the customer may be

15  asked (by voice cue) to provide detailed information such as name, address, etc. which

16  is recorded for later processing."  (SUF 102.)  Dr. Lucantoni recognizes this fact,

17  conceding that "subsequent processing" may mean "that the processing occurs after the

18  call is complete."  (SUF 103.)  Dr. Lucantoni argues that

19

20

21

22                                                    (SUF 104.)  Even if

23                        in the Macys CCS service could be considered "subsequent processing"

24  there is no evidence in the patent specification that subsequent processing was meant to

25  take place within the claimed system as is done

26  in the Macy's CCS service as described above, as opposed to after completion of the

27  call.

28

In sum, the CCS service does not infringe this limitation and summary judgment should be granted in favor of Macy's.  (COL 32.)

**J.      Summary Judgment Is Appropriate on Method Claims Asserted Against Macy's Where Multiple Actors Are Required to Meet the Claim Limitation**

Asserted claims '965:38 and 67 are not infringed as a matter of law because Macy's does not practice limitations on these asserted claims in light of controlling Federal Circuit precedent regarding infringement of method claims.

**1.      The Macy's CCS, EGC and HR Services Do Not Provide Digital Responsive Signals**

The preambles to asserted claims '965:38 and 67 recite "wherein said remote terminals include a digital input device for providing digital responsive signals."  (SUF 105.)  These preambles should be construed as limitation to the claims.  The Federal Circuit has held that a preamble is construed to limits the claimed invention "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim."  *Symantec Corp. v. Computer Associates Int'l*, 522 F.3d 1279, 1288 (Fed. Cir. 2008) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F .3d 801, 808 (Fed. Cir. 2002) (internal quotations omitted)); (COL 33).  In such cases, "there is no meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the claim."  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999); (COL 34).

This element of the preambles must be read as a limitation.  Subsequent limitations that include receiving from callers responsive signals illustrate that the claimed invention of the '965 patent would not function without remote terminals that can provide digital responsive signals and this is a "necessary component of the claimed invention."  *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003); (COL 35).

1   Against that background, the Macy's services accused by RAKTL do not infringe
2   this limitation and therefore the entire claim as a matter of law because "a single party"
3   is not "perform[ing] every step of a claimed method." *Muniauction, Inc. v. Thomson*
4   *Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008); (COL 36).

5   In *Muniauction*, the Federal Circuit held that "where the actions of multiple
6   parties combine to perform every step of the claimed method, the claim is directly
7   infringed only if one party exercises 'control or direction' over the entire process such
8   that every step is attributable to the controlling party, i.e., the 'mastermind." *Id.*; (COL
9   37). In *Muniauction*, the claims at issue were directed to an online auction of financial
10  instruments, such as bonds or debt offerings. *Id.* at 1321; (COL 37). It was undisputed
11  that the "inputting [of] data associated with at least one bid" for the auction was
12  completed by the bidder while the majority of the remaining steps were performed by
13  the auctioneer. *Id.* at 1329 & n.5; (COL 37).

14  The Federal Circuit found no liability as to the defendant because the bidders
15  were completing the inputting step. The Court specifically noted that just because the
16  defendant "controls access to its system and instructs bidders on its use is not sufficient
17  to incur liability for direct infringement." *Id.* at 1330; (COL 38). Comparably, Macy's
18  does not provide responsive signals via a digital input device and the provision of such
19  signals is not under the direction or control of Macy's. These signals are provided by
20  the public telephone network in response to actions made by the Macy's customer and
21  transmitted to Macy's via its telecommunications provider.

22  In a recent district court case, the defendant's motion to dismiss was granted
23  where two separate entities—both a remote computer user and a website server run by
24  the defendant—were required to infringe the patent claim. *See Global Patent Holdings,*
25  *LLC v. Panthers BRHC LLC*, No. 08-80013, 2008 U.S. Dist. LEXIS 61697, at *10-*11
26  (S.D. Fl. Aug. 13, 2008); (COL 39). The court noted that

27      Plaintiff has in no way, alleged that remote users are contractually bound to
28      visit the website, it has not alleged that the remote users are Defendant's

1    agents who visit the website within the scope of their agency relationship

2    nor has it alleged any facts which would render Defendant otherwise

3    vicariously liable for the acts of the remote user.

4  *Id.* at *10; (COL 39).  Similarly, Macy's should not be held liable for the actions of its

5  customers in providing responsive signals, or as a result of those signals being carried to

6  Macy's over the PSTN.  Macy's customers—the remote users in this case—are not

7  contractually bound to provide responsive signals at the digital input device.  Even if

8  Macy's has a contractual relationship with its telecommunication provider, this

9  relationship should not by itself extend liability to Macy's as Macy's has no control

10 over how the digital responsive signals are provided to Macy's.  *See Gammino v. Cellco*

11 *P'ship*, 527 F. Supp. 2d 395, 398-99 (E.D. Pa. 2007) (granting defendant's motion to

12 dismiss following *BMC Resources*, where the defendant had no control over how local

13 telecommunications service providers blocked international calls, which was a

14 necessary element of the claim, even though the defendant was in a contractual

15 relationship with the providers); (COL 40).

16          **2.    Macy's Has No Control Over Interfacing Callers to the PSTN**
17          **and Interfacing the PSTN to the Macy's System**

18         Claim '965:38 further includes the limitation "interfacing said certain individual

19 callers with an interface unit of said system."  (SUF 106.)  As RAKTL has noted, "the

20 interface unit is connected to the PSTN to allow voice and digital communication with

21 telephones operated by callers."  (SUF 107.)  The callers are interfaced to the PSTN by

22 the caller's telephone service provider and from the PSTN to the interface unit using

23 ████  Macy's service provider.  Thus, Macy's does not infringe this limitation and

24 therefore the entire claim as a matter of law because "a single party" is not

25 "perform[ing] every step of a claimed method."  *Muniauction, Inc.*, 532 F.3d at 1329;

26 *see Gammino*, 527 F. Supp. 2d at 399; (COL 41).

27         In sum, the CCS, EGC and HR services do not infringe claims '965:38, 67 and

28 summary judgment should be granted in favor of Macy's.  (COL 42.)

## V.   DAMAGES

### A.   Macy's Is Entitled to Summary Judgment of Non-Infringement for the Period After December 21, 2005

#### 1.   RAKTL's Damages as Against the BBM and EGC Services Should Be Limited to pre-December 21, 2005

As discussed *supra*, of the six patents asserted against Macy's, only the '120 patent expires after December 21, 2005.  RAKTL, through Dr. Lucantoni, has asserted that the BBM and EGC services only infringe patents that have expired in December 2005.  (SUF 108.)  Because there can be no infringement of an expired patent, RAKTL is not entitled to collect damages after December 20, 2005, for the alleged infringement of those claims. *See Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires."); (COL 43).

#### 2.   RAKTL's Damages as Against All Macy's Accused Services Should Be Limited to pre-December 21, 2005 to the Extent the Asserted '120 Patent Claims Are Invalid

As discussed *supra*, one of the three '120 patent claims that remain asserted against Macy's have already been invalidated in the B Track and Macy's in conjunction with the other C Track defendants has asked the Court to take judicial notice of that decision.  To the extent that this Court finds Claims '120:62 and 63 invalid prior to rendering any decision on the instant motion for summary judgment (and affirms its invalidity ruling regarding '120:57), Macy's requests that this Court limit RAKTL's damage claims to the period prior to December 20, 2005.  *See Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994); (COL 44).

### B.   RAKTL Cannot Prove Willful Infringement by Macy's

Macy's is entitled to summary judgment of no willful infringement because RAKTL cannot establish by clear and convincing evidence that Macy's acted with "objective recklessness."  *In re Seagate Tech.,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en

1   banc); (COL 45).  In *Seagate*, the Federal Circuit adopted a new standard for willful

2   infringement, which requires a patentee to "show by clear and convincing evidence that

3   the infringer acted despite an objectively high likelihood that its actions constituted an

4   infringement of a valid patent."[7]  *Id.*; (COL 46).  RAKTL cannot satisfy this standard as

5   a matter of law.[8]

6        As discussed below, the likelihood that Macy's would infringe a valid patent was

7   not "objectively high" for at least the following reasons:

8        • Of the twelve not yet invalidated claims currently asserted against

9          Macy's, Macy's had no pre-suit knowledge of seven of those claims,

10         '309:46; '120:62, 63; '707:24; '762:45, 67; and '965:67;

11       • Macy's did not have notice of the '309 patent (and its asserted claim

12         46) or asserted claims '707:24, '762:45, 67, and '965:67 until after

13         those patents had expired and did not have notice of the '707 patent,

14         '762 patent, '863 patent and '965 patent at all until just nine months

15         before those patent expired;

16       • Macy's has strong, credible non-infringement arguments as to each

17         of the asserted claims, as demonstrated in this Motion;

18

19

20   ────────────────

     [7] Further, if that threshold objective standard is met, the patentee must also demonstrate
21   that the objectively-defined risk was "either known or so obvious that it should have
     been known to the accused infringer." *Id.*; (COL 47).  Because RAKTL cannot meet the
22   threshold objective standard, its willful infringement claim against Macy's necessarily
     fails, and therefore the second prong of the test is not addressed herein.
23

24   [8] RAKTL's expert on willful infringement, Mr. Fiorito, conceded during his deposition
     that he did not conclude in his expert report that there was an objectively high likelihood
25   that Macy's actions constituted an infringement of a valid patent or that the objectively-
     defined risk was either known or so obvious that it should have been known to Macy's.
26   (SUF 109.)  Further, the opinions expressed in Mr. Fiorito's expert report, which are
     based on what he calls "objective indications" of invalidity and infringement, raise
27   issues of admissibility under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579
     (1993) (*see* D.I. 4792), and if ultimately determined to be inadmissible, may effectively
28   resolve the willful infringement issue in Macy's favor.

- Macy's has strong, credible invalidity defenses to each of the asserted claims, as demonstrated in C Track Defendants' joint summary judgment motions on invalidity (D.I. 4281, 4289), as well as this Court's 102/103 and 112 Summary Judgment Orders, which directly or indirectly invalidated a number of claims in the RAKTL patent portfolio, including three claims asserted against Macy's, '120:57, '965:43 and 51. (*See* § 102/103 Order; § 112 Order.)

- In *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, No. 01-CV-09871, 2003 U.S. Dist. LEXIS 23553 (C.D. Cal. Dec. 2, 2003), claims of the RAKTL patent portfolio were subject to various invalidity and/or non-infringement defenses and a portion of the RAKTL patent portfolio was held invalid and/or not infringed on summary judgment; and,

- A considerable portion of the RAKTL patent portfolio, including asserted claims '309:46; '120:62, and '707:24 of the twelve not yet invalidated claims, has been subject to reexamination in which substantial new questions of patentability have been found by the Patent Office.

It was not until January 13, 2009, well after RAKTL filed its Complaint against Macy's on June 7, 2007 (SUF 110), that RAKTL made its final identification of the patent claims it was asserting against the Macy's Parties Accused Systems and Services. (SUF 111.)  Prior to initiating this lawsuit, RAKTL sent Macy's a letter on October 8, 2003, in which RAKTL identified eight patent claims "that have been of interest to other companies offering similar services," from a patent portfolio of over 3,000 claims. (SUF 112.)  None of the claims now directly asserted by RAKTL against Macy's (SUF 113), however, was identified in RAKTL's initial October 8, 2003 letter. (SUF 113.)

The only other identification of specific claims that RATKL made to Macy's prior to this lawsuit was during an April 12, 2005 licensing meeting between RAKTL

and Macy's during which RAKTL's counsel made a presentation (the "April 12, 2005

Presentation") that only identified five of the twelve not yet invalidated claims asserted

against Macy's.  (SUF 114.)  Specifically, of the six currently asserted patents, the April

12, 2005 Presentation did not identify the '309 patent (or its asserted claim 46) nor the

'120 patent (or its asserted claims  62 and 63) at all.  (SUF 115.)  Further, asserted

claims '707:24, '762:45, 67 and '965:67 were also not identified in the April 12, 2005

Presentation.  (SUF 116.)  Accordingly, Macy's alleged infringement of asserted claims

'309:46; '120:62, 63; '707:24; '762:45, 67; and '965:67 for which it had no notice

cannot be deemed willful.  *See Imonex Servs., Inc. v. W.H. Munzprufer Dieter Trenner

Gmbh*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) ("Willful infringement . . . hinges on when

the defendants had actual knowledge of [Plaintiff's] patent rights, and their actions after

that time."); *cf. Seagate,* 497 F.3d at 1374 ("[A] willfulness claim asserted in the

original complaint must necessarily be grounded exclusively in the accused infringer's

pre-filing conduct."); (COL 48).

Further, RAKTL has not alleged that Macy's post-filing conduct with respect to

the aforementioned claims was reckless, and has not moved for a preliminary

injunction.  *See Seagate,* 497 F.3d at 1374 ("[W]hen an accused infringer's post-filing

conduct is reckless, a patentee can move for a preliminary injunction, which generally

provides an adequate remedy for combating post-filing willful infringement."); (COL

49).  Since RAKTL did "not attempt to stop [Macy's] activities" by a preliminary

injunction, RATKL cannot accrue enhanced damages based on Macy's post-filing

conduct. *Id.;* (COL 50).

Of key importance is the fact that the '309 patent, '707 patent, '762 patent, '863

patent and '965 patent each expired on December 21, 2005.  (SUF 19.)  Thus, Macy's

did not have notice of the '309 patent or asserted claims '707:24, '762:45, 67, and

'965:67 until this lawsuit, after those patents had expired.  (SUF 117.)  Macy's did not

have notice of the '707 patent, '762 patent, '863 patent and '965 patent at all until the

April 12, 2005 Presentation (SUF 118), just nine months before those patent expired.

(SUF 119.)  Accordingly, because willful infringement must be based on an infringer's actions after actual notice and because there can be no infringement of an expired patent, Macy's post-expiration actions could not have been willful.  *Seagate*, 497 F.3d at 1371; *Imonex*, 408 F.3d at 1377 (willful infringement assessed based on defendant's actions after actual notice); *see* 35 U.S.C. § 271(a); (COL 51).

The strength of Macy's invalidity and non-infringement positions for each of the asserted claims also precludes a finding that there was an objectively high likelihood of infringement of a valid patent.  *See Franklin Elec. Co. v. Dover Corp.,* No. 05-C-598-S, 2007 WL 5067678, at *22-23 (W.D. Wis. Nov. 15, 2007) (granting summary judgment of no willful infringement where defendant's non-infringement defenses had "significant support"); *Lucent Techs., Inc. v. Gateway, Inc.*, No. 07-CV-200-H, 2007 U.S. Dist. LEXIS 95934, at *21 (S.D. Cal. Oct. 30, 2007) (granting summary judgment of no willful infringement as a result of "substantial" and "close" questions regarding invalidity); *see also Black & Decker, Inc. v. Robert Bosch Tool Corp.*, No. 2007-1243, 2008 U.S. App. LEXIS 207, at *18 (Fed. Cir. Jan. 7, 2008) (non-precedential) (noting that under the "objective standard" for willful infringement, "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent"); *cf. Seagate*, 497 F.3d at 1371 (Whether an "objectively-defined risk" exists is "determined by the record developed in the infringement proceeding"); (COL 52).

The questionable validity of the claims asserted by RAKTL against Macy's is further demonstrated by the fact that a number of claims in the RAKTL patent portfolio have already been invalidated on summary judgment.[9] (*See* § 102/103 Order; § 112 Order.)  In particular, three of sixteen claims asserted against Macy's, '120:57, 67 and '965:43 were expressly invalidated by this Court in its 102/103 Order (SUF 121) and

---

[9]  Specifically, this Court's June 19, 2008 Order invalidated on summary judgment a total of thirty-seven RAKTL patent claims under 35 U.S.C. § 112 and its 102/103 Order invalidated eight additional claims in the RAKTL patent portfolio. (SUF 120.)

1  the assertion of claim '120:67 has been voluntarily withdrawn by RAKTL.  (SUF 13,

2  14.)  Further, claim 51 of the '965 patent is a base claim of claim 53, which was

3  invalidated by the Court (SUF 122), and therefore claim 51 is necessarily invalid as a

4  matter of law.  *See, e.g., Ormco*, 498 F.3d at 1319-20; (COL 2).

5       Of the twelve remaining asserted claims, all are the subject of at least the credible

6  invalidity defenses presented in the C Track Defendants' joint summary judgment

7  motions on invalidity (SUF 123), as well as at least the substantial non-infringement

8  arguments presented in this Motion.  These objectively reasonable defenses demonstrate

9  that no reasonable jury could conclude that RAKTL could meet its burden of showing

10  objective recklessness by clear and convincing evidence.  *Franklin,* 2007 WL 5067678

11  at *22-23 (granting summary judgment of no willful infringement where "plaintiff

12  cannot meet its burden to prove objective recklessness by clear and convincing

13  evidence" given that defendant's non-infringement position had "significant support");

14  *Lucent*, 2007 U.S. Dist. LEXIS 95934, at *17 (granting partial summary judgment of no

15  willful infringement because "a close question of invalidity" alone was "enough to

16  prevent Plaintiffs from meeting their burden of showing that they could establish an

17  objectively high likelihood of infringement by clear and convincing evidence"); *see also*

18  *Seagate,* 497 F.3d at 1374 ("A substantial question about invalidity or infringement is

19  likely sufficient not only to avoid a preliminary injunction, but also a charge of

20  willfulness based on post-filing conduct"); (COL 53).

21       In addition, prior to the instant lawsuit, a number of claims in the RAKTL patent

22  portfolio, including the '120 patent and '863 patent asserted against Macy's, were

23  subject to various invalidity and/or non-infringement defenses raised on summary

24  judgment in a collateral action, *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing,*

25  *L.P.*, 2003 U.S. Dist. LEXIS 23553, and a portion of the RAKTL patent portfolio was

26

27

28

MEMORANDUM IN SUPPORT OF MACY'S INDIVIDUAL MOTION FOR SUMMARY JUDGMENT
2:07-ML-1816-C-RGK; 2:07-CV-4958-RGK

1   held invalid and/or not infringed as a result.[10] (SUF 124.)  This evidence provided

2   Macy's with a reasonable basis to believe it did not infringe and further supports an

3   objectively reasonable basis for concluding that Macy's actions did not infringe any

4   valid RAKTL patent. *Abbott*, 532 F. Supp. 2d at 999-1000 (accused infringer's reliance

5   on a collateral opinion was a reasonable basis for concluding its actions did not

6   constitute infringement of a valid patent); (COL 55).

7        Further, all but one of the six patents asserted against Macy's, including three of

8   the twelve not yet invalidated claims asserted against Macy's ('309:46; '120:62, and

9   '707:24), are or have been subject to reexamination in which the Patent Office

10  determined that a substantial new question of patentability existed.  (SUF 125.)

11  Notwithstanding the presumption of validity, an order granting reexamination

12  "undoubtedly recognize[s] a substantial question regarding patentability, even viewed in

13  a light favorable to [RAKTL]." *Lucent*, 2007 U.S. Dist. LEXIS 95934, at *17 (granting

14  partial summary judgment of no willful infringement based in part on reexamination of

15  asserted claims); (COL 56.)  Reexamination of a considerable portion of RAKTL's

16  patent portfolio, and in particular patents and claims asserted against Macy's, raises a

17  least a "substantial question" about the validity of RAKTL's patents, and further

18  evidences that there was no "objectively high" likelihood that Macy's infringed a valid

19  patent. *Id.*; (COL 57).

20       In light of the foregoing facts, RAKTL cannot satisfy the threshold question of

21  "objective recklessness" because there are no facts upon which a reasonable juror could

22  find by clear and convincing evidence that Macy's "acted despite an objectively high

23  likelihood that its actions constituted an infringement of a valid patent." *Seagate*, 497

24  F.3d at 1371; (COL 58.)  Accordingly, Macy's is entitled to summary judgment of no

25  willful infringement.

26  _____

27  [10]  The *Verizon* decision did not have to be final and conclusive to support Macy's
    position. *Abbott Labs. v. Sandoz, Inc.*, 532 F. Supp. 2d 996, 1000 (N.D. Ill. 2007);
28  (COL 54.)

1

## VI.    CONCLUSION

For these reasons, summary judgment should be entered that the above-identified claims are not infringed by Macy's; that RAKTL cannot collect damages during the time periods addressed above; and that Macy's cannot be found to be a willful infringer.

Dated: January 23, 2009                          By _____
          New York, New York                          Anthony F. Lo Cicero

Daniel S. Ebenstein, Esq. (DE 2109)
Anthony F. Lo Cicero, Esq. (AL 7538)
Richard S. Mandaro, Esq. (RM 2602)
AMSTER, ROTHSTEIN & EBENSTEIN, LLP
Attorneys of Record for Defendants and
Counterclaim Plaintiffs/Third Party Plaintiffs
     Macy's, Inc. (f/k/a Federated Department
     Stores, Inc.), Bloomingdale's By Mail Ltd.,
     Bloomingdale's, Inc., FDS Bank and Macy's
     Credit And Customer Services, Inc. (f/k/a
     FACS Group, Inc.)